[Crim. No. 1236.   Fourth Dist.   May 15, 1958.]

THE PEOPLE, Respondent, v. BUEL GIBSON, Appellant.

J. Montgomery Carter, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Joe J. Yasaki, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant-appellant was convicted by a jury of armed robbery (violation of Pen. Code, § 211a) and of assault with a deadly weapon, a lesser offense included in the charge of assault with the intent to commit murder (violation of Pen. Code, § 217).   He admitted one prior felony conviction (robbery, second degree).   He was sentenced to state's prison on the first charge and appeals from the judgment.   The only question raised is the admissibility of a newspaper clipping offered for impeachment purposes.

The complaining witness testified that defendant assaulted him with a revolver on the evening of January 7, 1957, at about 7:30 p. m., while he was alone attending his small

grocery store. He testified defendant came in, went to the rear of the store, removed a small carton of beer, returned it to the cash register where he was standing; that defendant was immediately in front of him across the counter (about 18 inches away) and was bareheaded; that they stared at each other for some time; that defendant then pulled a gun from his jacket, shot twice, struck the complaining witness in the hand and hip and took money from the cash drawer; that when he started chasing defendant he left without the money but took the beer with him; that the police and reporters arrived and he was taken to the hospital; that he was not in condition to talk because he had tubes in his nostrils; that he gave no description of the assailant to anyone until the next day; that two or three days later pictures were brought from the police station on several occasions; that he looked at them and identified defendant from one of these pictures; and that he then, for the first time, described his assailant.

He testified at the trial that defendant's hair was brown, the same color it appeared to be in the courtroom, and that he still had a wave in it; that he noticed no scars on his face although he did make careful note of his features; that he, the complaining witness, was about 5 feet 11 inches tall; that he was standing on a rubber mat and defendant's eyes were about on a level with his as he stood there; that he estimated defendant's age between 30 and 35 years, his weight at approximately 185 pounds, and said that when one is looking down the "barrel of a 38 you aren't too good at weights and heights"; that he later, from a lineup of prisoners, identified defendant as the man who assaulted him, and that the defendant, seated in the courtroom, was the same man.

Defendant, who was apprehended on February 18th, testified, after admitting he had been convicted of two felonies, that he was 6 feet 3 inches tall, weighed 223-240 pounds, had several scars on his face, his eyes were blue, and that he had black hair on the day of the robbery but that was not its present color, which was dark brown; that once before he had bleached it blonde, and since then he had dyed it black on several occasions. He said at the trial the natural color of his hair had been restored (brown) due to his confinement in jail. He then testified on the night of the robbery he was in company with one Hamilton riding around; that they stopped at the "Mug" about 7 p. m. and then went to their apartment and went to bed. He denied being at the Ober store or

participating in the robbery. He attempted to corroborate his story by other witnesses. When he was apprehended he was wearing a button type jacket. The complaining witness testified he believed that was the jacket he wore on that night. Another witness testified in rebuttal that defendant's hair was dark brown on the night of February 17th when defendant held him up and that when defendant was apprehended two days later it was dyed black.

Defendant concedes the testimony in reference to identification was sufficient upon which to base the verdict but claims the complaining witness's testimony that he did not furnish a newspaper reporter or anyone with a description of the defendant the night of the robbery would be impeached if the trial court had properly allowed a newspaper clipping of the Fresno Bee published February 8th to be received in evidence, citing *People* v. *Turner,* 118 Cal. 324 [50 P. 537]; and article VI, section 4½, California Constitution.

Defendant has not produced the proffered exhibit as a record before this court. Therefore it should not be considered. We are not aware of its contents except the statement of counsel that it contains the headline: "Bandit Wounded Fresno Grocer —Flees With Beer," and that there was a description of the assailant in the story which varied in some respect to that given at the trial. The offer was qualified as not bearing on the truth of the description nor the truth of the story but as evidence of former statements made by Ober not in accordance with his present testimony. The objection was that it was hearsay. No foundation was laid for its admission and there was no testimony offered by anyone that Ober made the statements or furnished the description therein appearing. It was hearsay evidence and was clearly inadmissible for the purpose of impeachment without further foundation. (*People* v. *Glaze,* 139 Cal. 154 [72 P. 965]; *Carpenter* v. *Ashley,* 148 Cal. 422, 426 [83 P. 444, 7 Ann.Cas. 601].) Any evidence offered by way of impeachment must be competent and cannot be based on hearsay. (Code Civ. Proc., § 2051; 27 Cal.Jur. p. 146, § 122.)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 9, 1958.